**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONNOCO COFFEE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-1401 RLW |
| | ) | |
| CHARLES PEOPLES, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

This matter came before the Court on Plaintiff Ronnoco Coffee LLC's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 13). Defendant Charles Peoples opposes the Motion and it is fully briefed. The Court heard oral argument of counsel on Ronnoco's Motion for Temporary Restraining Order on November 18, 2020. The Court has reviewed the First Amended Verified Complaint ("Complaint"), the Motion and its supporting exhibits including the Declaration of John Walker, and Defendant Peoples' opposition memoranda, exhibits, and Declaration.[1] Being fully advised in the premises, the Court grants the Motion for Temporary Restraining Order as follows.

**Jurisdiction and Choice of Law**

The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a), as Ronnoco is a citizen of Missouri and Peoples is a citizen of Texas, and the amount in controversy exceeds the sum of $75,000, as evidenced by the value of Ronnoco's customer contracts at issue.

---

[1] Peoples' opposition to Ronnoco's Motion for Temporary Restraining Order did not include any verified evidence, as noted by Ronnoco's counsel during oral argument. Two days later, Peoples sought leave to file a Declaration that states the facts set forth in his Answer (ECF No. 11) to the Complaint are true and correct to the best of his knowledge, information, and belief. The Court has granted leave for the Peoples Declaration to be filed.

Personal jurisdiction over a non-resident defendant may be obtained by consent or by waiver.  Whelan Sec. Co. v. Allen, 26 S.W.3d 592, 595 (Mo. Ct. App. 2000).  Personal jurisdiction is an individual right that can be waived in advance through a forum selection clause contained in a contract between the parties.  Id.  Under Missouri law, contractual choice-of-law provisions are enforced.  PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 326 (8th Cir. 2001) (citing Rheem Manuf. Co. v. Progressive Wholesale Supply Co., 28 S.W.3d 333, 339 (Mo. Ct. App. 2000)).  The non-competition agreement between the parties at issue here specifies that Missouri law applies and further provides for jurisdiction and venue in this forum.  Defendant Peoples has therefore both stipulated and consented to Missouri law as the choice of law and to personal jurisdiction in this Court.

**Background**

Plaintiff Ronnoco has sold and distributed coffee and other products in the United States for over 100 years. ECF 11 ("Complaint"), ¶ 31.  Over the years, it has expanded geographically and expanded its product offerings beyond coffee.  Id.  In early 2020, Ronnoco acquired a majority ownership interest in Trident Marketing, Inc. and Trident Beverage, Inc. ("Trident"). Id.  ¶ 32.  Today, Ronnoco and Trident are separate legal entities in a parent/subsidiary relationship.  Id.  Trident markets a line of 100% fruit juice beverage concentrates dispensed under the name "Juice Alive."  Id. ¶ 33.

Defendant Peoples began working for Ronnoco on March 26, 2020.  Id. ¶¶ 4, 35.  Before that, Peoples was employed by Trident for over five years.  Id. ¶ 5.  Trident required Peoples to sign an Agreement to Protect Confidential Information and Business Relationships when it hired him in May 2014. (ECF Nos. 24-4, 24-5 at 2.)  Peoples' offer of employment with Ronnoco specified he would be in the position of Territory Manager with both Ronnoco and Trident.  Id.

¶ 33; Complaint, Ex. 1.  Peoples was a joint Ronnoco/Trident employee.  Peoples' territory was in Texas in a geographic area that included the greater Houston area, southwest along the Gulf of Mexico to Brownsville, north to San Antonio, further north to Dallas/Fort Worth, and south back to Houston, including all areas in between.  Id. ¶ 38.

In his position as Territory Manager, Peoples had access to confidential information pertaining to Ronnoco/Trident's customers and products.  Id. ¶ 39.  He participated in the creation of Ronnoco/Trident's trade secrets involving those customers within his territory because he was involved in the expansion of Ronnoco/Trident's sales in his territory.  Id. ¶¶ 39, 46.  He was directly involved in the development and expansion of Ronnoco/Trident's customers within his territory.  Id.  Among other items, Peoples acquired: (a) access and knowledge concerning Ronnoco/Trident's information relating to customers within his territory; (b) access and knowledge regarding Ronnoco/Trident's pricing overall and to specific customers; (c) access and knowledge regarding Ronnoco/Trident's product lines; and (d) access and knowledge regarding the specific requirements, specifications, and purchases of customers within his territory.  Id. ¶ 45.

Because of Peoples' access to and involvement with Ronnoco/Trident's confidential information and trade secrets, Ronnoco required as a condition of his employment that Peoples execute a non-competition agreement titled Fair Competition Agreement (the "Agreement").  Id. ¶ 39; Complaint, Ex. 2.  The Agreement expressly prohibits Peoples from working with a competitor of Ronnoco both during his employment and for two years after employment with Ronnoco.  Section Two of the Agreement provides in part:

> During my employment and for two (2) years thereafter, and within two hundred (200) miles of any of my work locations for the Company, I will not, directly or indirectly, for myself or on behalf of or in connection with any other person, entity or organization: (a) engage in any business or activity that is competitive

with the business of the Company; (b) … assist or be connected with (including, but not limited to, as an employee, consultant, or otherwise) any business that directly or indirectly competes or is seeking to compete with the business of the Company; and/or (c) undertake any efforts or activities toward commencing any business or activity that could be competitive with the business of the Company. . . . .

Complaint, Ex. 2 at ¶ 2.

The Agreement further prohibits Peoples from soliciting Ronnoco's employees, clients or customers:

During my employment and for two (2) years thereafter, I will not, directly or indirectly, for myself or on behalf of or in connection with any other person, entity or organization: (a) induce or attempt to induce any employee or consultant of the Company to leave the employ or services of the Company or in any way interfere with the relationship between the Company and any employee or consultant thereof; and/or (b) call on, solicit, have contact with, or service any client of the Company with whom I have had material contact, in order to (i) solicit business of the type provided by the Company, (ii) to induce or attempt to induce such person or entity to cease doing business with, or reduce the amount of business conducted with, the Company, or (iii) in any way to interfere with the relationship between any such person or entity and the Company.

Id. at ¶ 3.

The Agreement also prohibits Peoples from disclosing Ronnoco's confidential and proprietary information:

I will keep confidential and not disclose or use, either during or after my employment, any Confidential Information of the Company, except as required in good faith in performing my employment duties for the Company or as authorized by the Chief Executive Officer of the Company in a signed writing addressed specifically to me.  "Confidential Information" means any information that is used, developed, obtained or received by the Company in connection with the Company's customer or supplier relationships and its other trade secrets, including but not limited to the following: (a) client and prospective client information, including client lists, compilations of client data, client preferences, and personal and/or financial information relating to clients; (b) business information, including contractual arrangements, business plans, strategies, tactics, policies, procedures, resolutions, litigation or negotiations; ( c) marketing information, including sales or product plans, strategies, tactics, methods, or market research data; (d) financial information, including costs and performance data, pricing information, sales figures, profit or loss figures, debt arrangements,

equity structure, investors and holdings; (e) personnel information, including personnel lists, resumes, personnel data, organizational structure and performance evaluations; and (f) product or service information, such as drawings, schematics, sketches, models, software, hardware, computer systems, source codes, suppliers, materials, equipment, research and development data, testing data, and other similar records.  If ordered by a court of competent jurisdiction to disclose Confidential Information, I will provide written notice to the Company of such order immediately and cooperate in its efforts to safeguard such information.  For the avoidance of doubt, Confidential Information does not include information in the public domain.

Id. at ¶ 4.

Peoples agreed to abide by these provisions when he signed the Agreement on March 18, 2020.  Id.

Peoples' employment with Ronnoco/Trident ended on May 20, 2020.  Complaint, ¶ 47.  On April 16, 2020, before his employment with Ronnoco/Trident ended, Peoples helped one of its direct competitors, Smart Beverage, d/b/a Thirsty Coconut ("Thirsty Coconut"), submit a competing bid to the TEXAS 20 Purchasing Cooperative in San Antonio, Texas ("Region 20").  Walker Decl., ¶¶ 10-11.  Thirsty Coconut is in the same industry and competes directly with Ronnoco/Trident in the area of frozen fruit juice beverages.  Complaint ¶ 51.  In addition to his work for a direct competitor of Ronnoco, Peoples has been in contact with Ronnoco's customers and intends to divert those customers to Thirsty Coconut.  Id. ¶ 52.  This is in direct violation of the Agreement.

After Peoples' departure from Ronnoco/Trident, Peoples breached and continues to breach his contractual obligations with Ronnoco by working for Thirsty Coconut on bids that are directly competitive with Ronnoco/Trident.  Id. ¶ 49.  Peoples' employment with Thirsty Coconut, which is located within 200 miles of his work location for Ronnoco – Houston, Texas – is a violation of the Agreement.  Ronnoco sent cease and desist letters to both Peoples and Thirsty Coconut but received no response from either.

**Injunctive Relief Standard**

In determining whether to issue a temporary restraining order, the Court must consider four factors: (1) the likelihood the moving party will succeed on the merits, (2) the threat of irreparable harm to the moving party; (3) the balance between this harm and the injury that granting the injunction will inflict on other parties; and (4) the public interest. Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). The inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113.

The likelihood of success is the most important factor. Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011). This factor directs courts to ask whether the party requesting a preliminary injunction has a "fair chance of prevailing." Planned Parenthood Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). Even when a plaintiff has a strong claim on the merits, however, "[f]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." Phyllis Schlafly Rev. Trust v. Cori, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoted case omitted). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). The moving party bears the burden to establish the need for a preliminary injunction. Chlorine Institute, Inc. v. Soo Line R. R., 792 F.3d 903, 914 (8th Cir. 2015).

**Discussion**

Missouri courts will enforce a non-competition agreements in limited circumstances that are "demonstratively reasonable." Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835, 841 (Mo.

2012) (en banc).  "A non-compete agreement is reasonable if it is no more restrictive than is necessary to protect the legitimate interests of the employer."  Id. at 842 (quoted case omitted). The agreement must be narrowly tailored in terms of time and geography, and must protect legitimate employer interests "beyond mere competition by a former employee."  Id.  at 841-82. Further under Missouri law, "a non-compete agreement is enforceable 'only to the extent that the restrictions protect the employer's trade secrets or customer contacts.'"  Id. at 842 (quoting Healthcare Servs. of the Ozarks, Inc. v. Copeland, 198 S.W.3d 604, 610 (Mo. 2006) (en banc)). "The employer has the burden to prove that the non-compete agreement protects its legitimate interests in trade secrets or customer contacts and that the agreement is reasonable as to time and geographic space."  Id.

Applied to this case, Ronnoco must show the Agreement is reasonable for it to be enforced against Peoples, and that its terms are not more restrictive than necessary to protect Ronnoco's legitimate interests.  Id.

A.  Likelihood of Success on the Merits

On the current record, the Court finds Ronnoco has met its burden of establishing that preliminary relief is warranted.  First, the Court finds that Ronnoco has shown a substantial likelihood of prevailing on the merits.  Peoples knowingly executed the Agreement.  The evidence presented in Ronnoco's Verified Complaint, the Declaration of Trident's President, and the exhibits shows that Peoples had access to confidential or proprietary information in his position with Ronnoco/Trident, including its customer base and pricing and bidding information and strategies.  Peoples developed relationships with Ronnoco/Trident customers and has the knowledge and influence to solicit them for his new employer, Thirsty Coconut, a direct Ronnoco/Trident competitor.  There is evidence Peoples has violated and is actively violating the

Agreement by which he has agreed to be bound, by helping Thirsty Coconut submit competitive bids for Ronnoco/Trident customers before and after his employment with Ronnoco/Trident ended.

           1.  <u>The Agreement is Enforceable</u>

As a threshold matter, the Court finds there is adequate consideration for the Agreement, executed as a condition of Peoples' acceptance of Ronnoco/Trident's offer of employment in March 2020.   Peoples' continued employed with Trident and his new employment with Ronnoco, which gave him attendant access to Ronnoco/Trident's new and existing customers, its protectable information, as well as continued at-will employment, salary, and commissions constitutes adequate consideration.  <u>See</u> <u>JumboSack Corp. v. Buyck</u>, 407 S.W.3d 51, 57 (Mo. Ct. App. 2013).  "Missouri courts have recognized that continued at-will employment constitutes consideration for a non-compete agreement where the employer allows the employee 'by virtue of the employment[,] to have continued access to [its] protectable assets and relationships.'"  <u>Id.</u> at 56-57 (citing cases.)  <u>See also</u> <u>Allstate Ins. Co. v. Head</u>, 2018 WL 6050881, at *6 (W.D. Mo. Nov. 19, 2018) (non-compete agreement supported by consideration where defendant insurance agent "'received in consideration . . . access to [Allstate's] new and existing customers' and other confidential information that, parties agreed, constitute protectable assets.") (quoting <u>JumboSack</u>).

The Agreement protects interests that Missouri recognizes as legitimate and protectable as a matter of law, including Ronnoco's confidential business information, customer contacts, and goodwill, and its interest in preventing Peoples from unfairly using those assets to compete with Ronnoco, diverting away its customers, and obtaining an undue advantage for his new employer's competing business.  <u>See</u>, <u>e.g.</u>, <u>Safety-Kleen Sys., Inc. v. Hennkens</u>, 301 F.3d 931,

937 (8th Cir. 2002) ("The Missouri courts have frequently held that . . . substantial and individualized customer contacts are a protectable interest warranting injunctive relief enforcing a covenant not to compete."); Kessler-Heasley Artificial Limb Co., Inc. v. Kenney, 90 S.W.3d 181, 186 (Mo. Ct. App. 2002).  Ronnoco also has a legitimate and protectable interest in protecting its client information and client relationships from use by a competitor.  See Mid-States Paint & Chem. Co. v. Herr, 746 S.W.2d 613, 617 (Mo. Ct. App. 1988) ("The employer has protectable interests in trade secrets and customer contacts.").

The Court is not persuaded by Peoples' largely unsupported arguments that Ronnoco cannot enforce the Agreement because he did not gain access to any of Ronnoco's customer information or trade secrets in the brief time he worked for it.  This argument ignores that Peoples worked for Trident for five years under an agreement protecting confidential information and business relationships, Ronnoco purchased Trident and all of its assets in early 2020, including confidential customer and other trade secret information, and Peoples became a joint Ronnoco/Trident employee.  During the course of his employment with Trident, Peoples acquired its confidential and business relationship information including but not limited to customer contacts, pricing, and contract bidding strategies.  Ronnoco/Trident as Peoples' subsequent employer has a legitimate interest in restraining him from using knowledge he gained while working for Trident as well as Ronnoco to unfairly compete against it.  Cf. Emerson Elec. Co. v. Rogers, 418 F.3d 841, 845 (8th Cir. 2005) (non-compete agreement was enforceable against manufacturers' representative with respect to customers the representative had before he started working with Emerson and those who had never purchased Emerson's products: "Emerson's interest in protecting its relationships with customers to whom Rogers sold products prior to his relationship with it is now as important to Emerson as is its ability to sell to new

customers.  Emerson has a legitimate business interest in restraining Rogers from violating the terms of their agreement by unfairly using the relationships he developed or strengthened while working with it.").

The Agreement is adequately restricted in both time and geographic reach.  The noncompetition, nonsolicitation, and nondisclosures provisions are limited to two years from the execution of the Agreement, subject to tolling, which is reasonable.  See Church Mut. Ins. Co. v. Sands, 2014 WL 3385208, at *3-4 (W.D. Mo. July 9, 2014) (holding a three-year non-compete agreement enforceable; citing House of Tools & Eng'g, Inc. v. Price, 504 S.W.2d 157, 159 (Mo. Ct. App. 1973) (enforcing three-year non-compete agreement where employee salesperson was given extensive information on the employer's customers)); Alltype Fire Prot. Co. v. Mayfield, 88 S.W.3d 120, 123 (Mo. Ct. App. 2002) (finding a two-year limitation on employment reasonable).  The geographic area of the noncompetition provision is limited to a 200-mile radius from any of Peoples' work locations for Ronnoco.  This is reasonable as it serves to protect Ronnoco against Peoples' use of confidential information in the places it would damage Ronnoco the most.  See Mid–States Paint, 746 S.W.2d at 617 (finding a salesperson's former sales territory constitutes an acceptable geographic restriction).

## 2. Peoples Breached the Agreement

The Agreement is currently in effect.  The evidence presented establishes that Peoples started work for direct competitor Thirsty Coconut immediately upon leaving Ronnoco/Trident; Peoples surreptitiously worked with Thirsty Coconut before leaving Ronnoco/Trident, at minimum by allowing it to use his home address as Thirsty Coconut's purported business address so Thirsty Coconut could falsely portray itself as a Texas resident business on the

Region 20 bid it submitted in direct competition to Ronnoco/Trident's bid;[2] shortly after leaving Ronnoco/Trident, Peoples helped Thirsty Coconut submit another successful competing bid against Ronnoco/Trident, this one to Choice Partners Cooperative in Houston, Texas ("Choice Partners"), again allowing Thirsty Coconut to use his home address as its purported Texas resident business address; and Peoples continues to work for Thirsty Coconut within the geographic area prohibited by the Agreement.  All of these facts indicate Ronnoco is likely to succeed on the merits of its breach of contract claim against Peoples.

The Court also finds Ronnoco is likely to succeed on the merits of its trade secret claim. To establish a violation of the Missouri Uniform Trade Secrets Act ("MUTSA"), a plaintiff must demonstrate "(1) the existence of a protectable trade secret, (2) misappropriation of those trade secrets by Defendants, and (3) damages."  Secure Energy Inc. v. Coal Synthetics, LLC, 708 F.Supp.2d 923, 926 (E.D. Mo. 2010).  Missouri law defines a trade secret as:

> information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, or process, that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453(4) (2010).  Misappropriation is defined as a person's use of a trade secret of another:

> without express or implied consent if that person: (a) used improper means to acquire knowledge of the trade secret; (b) knew or had reason to know that it was a trade secret and that knowledge had been acquired by accident or mistake; or (c) at the time of the use, knew or had reason to know that knowledge of the trade secret was (1) derived from or through a person who had utilized improper means

---

[2]Counsel for the parties informed the Court at the hearing that while Thirsty Coconut was the successful bidder for Region 20, prevailing over Ronnoco/Trident's bid, it was later disqualified when Region 20 learned that Thirsty Coconut's CEO has felony convictions, which violate its bidding requirements.  As a result, the Region 20 bid was subsequently awarded to Ronnoco/Trident.

to acquire it, (2) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or (3) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

Secure Energy, 708 F.Supp.2d at 926 (citing Mo. Rev. Stat. § 417.453(2)(b)).

Based on the current record, the Court finds that during his employment with Ronnoco/Trident, Peoples was privy to and worked extensively with Ronnoco/Trident's trade secrets regarding such matters as names of and specific contacts at Ronnoco/Trident's customers and potential customers; contracts between Ronnoco/Trident and its customers, along with the terms of those contracts, and confidential business information such as pricing and contract bid strategy. Peoples knew this information was Ronnoco/Trident's trade secrets, and he acquired it under circumstances giving rise to a duty to maintain its secrecy.

Peoples' actions in working with Thirsty Coconut to assist it in submitting a competing, initially successful bid to Region 20 while still employed by Ronnoco/Trident, and assisting it in submitting a second successful competing bid after that employment ended, gives rise to a strong inference of irreparable harm, and suggests that Peoples may have violated his undisputed duty to not use the Ronnoco/Trident information he possessed. If Peoples were permitted to work at Thirsty Coconut, his use and disclosure of Ronnoco/Trident's trade secrets appears inevitable because (1) his responsibilities at Thirsty Coconut are similar to those he held for Ronnoco/Trident and he is likely to be in situations where his knowledge of Ronnoco/Trident's confidential information would help Thirsty Coconut in competing against Ronnoco/Trident, and (2) Peoples' actions in working to assist Thirsty Coconut before leaving Ronnoco/Trident demonstrate an unwillingness to honor the terms of the Agreement and preserve confidentiality. See Express Scripts, Inc. v. Lavin, 2017 WL 2903205, at *7 (E.D. Mo. July 7, 2017); H&R

Block Eastern Tax Services, Inc. v. Enchura, 122 F. Supp. 2d 1067, 1074-75 (W.D. Mo. 2000). Such threatened misappropriations also can be enjoined.  Mo. Rev. Stat § 417.455.1.

Thus, the Court finds that Ronnoco has a reasonable likelihood of success on the merits of its MUTSA trade secrets claim.[3]

B.  Irreparable Harm to Ronnoco Absent an Injunction

Ronnoco has sufficiently shown it will suffer irreparable harm if temporary injunctive relief is not granted.  Irreparable harm is established if monetary remedies cannot provide adequate compensation for improper conduct.  Rogers Grp., Inc. v. City of Fayetteville, Ark., 629 F.3d 784, 789 (8th Cir. 2010).  The Court finds there is a threat of irreparable harm to Ronnoco/Trident if Peoples is not restrained from using confidential trade secret information and influence he acquired during his tenure with Ronnoco/Trident.  Loss of consumer goodwill can constitute irreparable harm.  Gen. Motors, 563 F.3d at 319.  The threat of unrecoverable economic loss and customers qualifies as irreparable harm.  Iowa Utilities Bd. v. F.C.C., 109 F.3d 418, 426 (8th Cir. 1996) (quoted case omitted).  "Courts generally hold that the disclosure of confidential information such as business strategy will result in irreparable harm to the plaintiff[.]"  Panera, LLC v. Nettles, 2016 WL 4124114, at *4 (E.D. Mo. Aug. 3, 2016) (citing cases).  Courts have also presumed irreparable injury from a breach of a covenant not to compete or solicit, or of a confidentiality agreement.  See, e.g., H&R Block Tax Servs. LLC v. Haworth, 2015 WL 5601940, at *4 (W.D. Mo. Sept. 22, 2015) ("Irreparable harm also properly is presumed where, as here, there is evidence that a covenant not to compete is breached or confidential, proprietary information is being improperly used.").

---

[3]Ronnoco's breach of duty of loyalty claim (Count II) may be subsumed at least in part within its MUTSA claim.  See Custom Hardware Eng'g & Consulting, Inc. v. Dowell, 918 F.Supp.2d 916, 936 (E.D. Mo. 2013) ("By virtue of [MUTSA], civil claims that are derivative of a claim of misappropriation of trade secrets are preempted.  Claims based on facts related to the misappropriation claim are derivative, and therefore preempted.") (cited case omitted).

In this case, the irreparable harm to Ronnoco may include not only the disclosure of confidential information and trade secrets, potentially resulting in unrecoverable economic losses and loss of customers, but also the violation of a binding non-competition agreement designed to protect Ronnoco's interests.  As such, its remedy at law is inadequate because its damage would be difficult if not impossible to measure.  See Baker Electric Co-op., Inc. v. Chaske, 28 F.3d 1466, 1473 (8th Cir. 1994); Systematic Bus. Servs., Inc. v. Bratten, 162 S.W.3d 41, 51 (Mo. Ct. App. 2005).  In addition, Peoples agreed that in the event of a breach of the Agreement, Ronnoco would be entitled to equitable relief, as monetary damages would not fully compensate it for its injuries. (ECF 11-2, ¶ 8.)

If the Court does not intervene to enjoin Peoples' conduct, Ronnoco will continue to sustain irreparable damage in the form of lost customers, business, and goodwill.  Peoples' employer Thirsty Coconut is directly competing against Ronnoco for its customers and contracts, in the same Texas region where Peoples worked for Ronnoco/Trident.  Based on the authority cited and the evidence presented, this factor favors entry of a temporary restraining order.

C.  Balance of Harms

Next, the balance between the harm and the injury that granting the temporary restraining order will inflict favors granting the requested relief.  The Court is persuaded that Peoples possesses information that could be used for the purpose of causing irreparable harm to Ronnoco/Trident in the form of lost customers, contracts, and a diminished competitive position. The injury to Ronnoco's relationships with its customers and injury to its business outweighs any potential harm that the proposed relief may cause Peoples

Peoples signed the Agreement, which acknowledges that "injunctive relief will not deprive [him] of an ability to earn a living because [he] is qualified for many positions which do

not involve competing with [Ronnoco] or otherwise necessitate the breach of any provision of this Agreement[.]"   (ECF No. 11-2, ¶ 8(d).)   Peoples accepted significant financial and other benefits from his employment with Ronnoco/Trident, and he should not now be relieved of his own obligations.  See Emerson Elec., 418 F.3d at 846.  While Peoples will not be permitted to work for Thirsty Coconut, he is free to obtain other employment that calls for his sales skills in businesses that do not compete with Ronnoco/Trident.  Any harm to Peoples is self-inflicted and the restraints being placed on him are no greater than those to which he already agreed.  See, e.g., Sierra Club v. U.S. Army Corps of Eng'rs, 645 F.3d 978, 997 (8th Cir. 2011) (balance of harms weighed in plaintiff's favor where injury to defendant was "largely self inflicted").  Further, the harm to Peoples if he is enjoined until the Court holds a preliminary injunction hearing can be mitigated by the payment of any monies that may be lost during the period of non-employment.  Thus, the harm that Ronnoco has suffered and will continue to suffer absent an injunction outweighs any harm that may befall Peoples if his actions are enjoined.

D.  The Public Interest

Finally, the public interest also favors Ronnoco.  Missouri courts have found that the enforcement of reasonable restrictive covenants serves the public interest.  See Schott v. Beussink, 950 S.W.2d 621, 625 (Mo. Ct. App. 1997) ("Missouri courts recognize that public policy approves employment contracts containing restrictive covenants because the employer has a proprietary right in its stock of customers and their good will, and if the covenant is otherwise reasonable, the court will protect the asset against appropriation by an employee.").  "The public interest is also furthered by preserving the enforceability of contractual relationships."  H&R Block Tax Servs., LLC v. Cardenas, 2020 WL 1031033, at *4 (W.D. Mo. Mar. 3, 2020).

Conversely, denying injunctive relief would undermine the enforceability of contractual relationships and the Missouri Uniform Trade Secrets Act.

**Conclusion**

For the foregoing reasons, the Court finds the <u>Dataphase</u> factors have been met with respect to Ronnoco's request for a temporary restraining order against Peoples.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Ronnoco Coffee LLC's Motion for Temporary Restraining Order is **GRANTED**.  (ECF. No. 13)

**IT IS FURTHER ORDERED** that Charles Peoples and his agents, and all other persons who are in active concert with him, are temporarily restrained until further Order of this Court from directly or indirectly:

(1) With respect to confidential and proprietary information, including trade secrets, of Ronnoco/Trident, from disclosing, using, or providing any such documents, information, or trade secrets, directly or indirectly, to anyone, except for the return of such documents, information, or trade secrets directly to Ronnoco or its attorneys;

(2) Acting, directly or indirectly (whether as an owner, employee, consultant, independent contractor or any other role) in any capacity with a company that directly competes with Ronnoco/Trident, including but not limited to Smart Beverage, d/b/a Thirsty Coconut; and

(3) Calling upon, soliciting, diverting, attempting to call upon, solicit, or divert (or assist in any of the foregoing), or accept business from/do business with any customer/potential customer of Ronnoco/Trident that was a customer/potential customer during Peoples' employment with Ronnoco/Trident.

**IT IS FURTHER ORDERED** that Ronnoco Coffee LLC shall post security in the amount of $2,500 with the Clerk of the Court within seven (7) days of the date of this Order, in cash or through a Court-approved surety.

**IT IS SO ORDERED**.


RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of November, 2020.