**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONNOCO COFFEE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:20-CV-1401 RLW |
| v. | ) | |
| | ) | |
| CHARLES PEOPLES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on two motions to dismiss for lack of subject matter jurisdiction filed by Defendant Charles Peoples ("Defendant" or "Peoples"), and Defendant's Motion to Reopen Evidence. The Court conducted a bench trial in this matter by Zoom video teleconference on February 8 and 9, 2021, and the case is under submission. The Court addresses Defendant's motions challenging its subject matter jurisdiction over this action and its motion to reopen evidence prior to reaching the merits of this matter.

A. Motion to Dismiss for Lack of Jurisdiction–Standing

Defendant Peoples moves to dismiss Plaintiff Ronnoco Coffee LLC's ("Plaintiff" or "Ronnoco") Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), Federal Rules of Civil Procedure. (ECF No. 91.) The Amended Complaint ("Complaint") asserts claims against Peoples for breach of contract on the parties' Fair Competition Agreement ("FCA") (Count I), breach of the duty of loyalty (Count II), violation of the Missouri Uniform Trade Secrets Act ("MUTSA") (Count III), and injunctive relief (Count IV).

"'A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack"' on jurisdiction. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990)." Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016). "In a facial attack, 'the

court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6).'" Id. (quoting Osborne, 918 F.2d at 729 n.6). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (quoting Osborne, 918 F.2d at 729 n.6).

Peoples' motion offers a factual attack. Peoples asserts that Ronnoco lacks standing to bring this action because it not the true party in interest and, as a result, there is no actual case or controversy before the Court. Peoples states that the Complaint alleges he became a Ronnoco employee at or near the time a transaction took place in which Ronnoco acquired a majority interest in Trident Marketing, Inc., and Trident Beverage, Inc. (collectively "Trident"), for which Peoples previously worked, and that Trident and Ronnoco are separate legal entities in a parent/subsidiary relationship. (Complaint, ¶¶ 2, 6, 32.) Peoples states that John Walker, President of Trident, later testified and clarified that the assets of Trident Marketing and Trident Beverage were actually acquired by a holding company called Trident Holdings, and those assets included the non-competition agreement that Trident Beverage entered into with Peoples. Mr. Walker also testified that Ronnoco is one of three owners of Trident Holdings, and Ronnoco owns 80% of the Trident Holdings stock, while John Walker owns 17% and his brother Patrick Walker owns the remaining 3% of the Trident Holdings stock.[1]

Peoples asserts that he had two separate agreements containing post-employment restrictions, one with Trident and one with Ronnoco. He states that the FCA between himself and

[1]According to Defendant's Motion to Reopen Evidence, discussed *infra*, John Walker testified in a related case in this Court, Ronnoco Coffee, LLC v. Castagna, 4:21-CV-71 JAR, that the ownership structure of Ronnoco and Trident is both more complex and more attenuated than the evidence and testimony presented to this Court disclosed. For purposes of resolving the motions to dismiss, however, the Court assumes the ownership facts to be as they were known and appeared in the record at the time the motions were filed.

Ronnoco defines the term "Company" as Ronnoco Coffee LLC, and does not include other companies in which Ronnoco may have an ownership interest. Peoples argues that the FCA recites he "will form" customer relationships that Ronnoco is entitled to protect, so he contends his pre-existing relationships formed during his employment with Trident are not included under the FCA. Further, Peoples asserts that the FCA only restricts him from engaging in activity that is "competitive with the business of [Ronnoco]," and that Ronnoco's business is selling coffee, not selling fruit juices to the K-12 market which is Trident's business.

Peoples contends that Ronnoco is not Trident, and Ronnoco may not bring a claim that belongs to another entity, even if it is the controlling shareholder of that entity. He also contends that Ronnoco has no injury, because "[r]etained earnings and profits of a corporation are a corporate asset and remain the corporation's property until severed from other corporate assets and distributed as dividends." (ECF No. 92 at 6, quoted case omitted.)

Defendant's argument is misplaced to the extent it is directed to the issue of standing. "It is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." Carlsen, 833 F.3d at 909 (quoting ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters, 645 F.3d 965, 960 (8th Cir. 2011)). It is well established in the Eighth Circuit "that a plaintiff who has 'produced facts indicating it was a party to a breached contract' has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged." Id. (citing ABF, 645 F.3d. at 960; Longaker v. Boston Sci. Corp., 715 F.3d 658, 664 (8th Cir. 2013) (Bye, J., dissenting) ("[Plaintiff] has stated a personal injury because [Defendant] allegedly breached his employment contract[.]")); see also Kuhns v. Scottrade, Inc., 868 F.3d 711, 716 (8th Cir. 2017) (quoting Carlsen, 833 F.3d at 909); Stuart v. State Farm Fire and Cas. Co., 910 F.3d 371, 377 (8th Cir. 2018) ("a party to a breached contract

has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged.") (quoting Kuhns, 868 F.3d at 716).

Here, the Complaint alleges and the parties have testified that Ronnoco and Peoples were parties to a contract, the FCA, and Peoples does not dispute this contractual relationship. The Complaint alleges and John Walker testified that Peoples breached the FCA by accepting work with a direct competitor, Smart Beverage, Inc., and helping it compete directly with Ronnoco for customer contracts by soliciting Ronnoco's customers. The Complaint also alleges and John Walker testified that Peoples' action caused, or will cause, Ronnoco to suffer lost profits in excess of $75,000.

Whether Ronnoco is unable to prevail on its breach of contract claim for the reasons asserted by Peoples is a merits question. Whatever the merits of Ronnoco's contract claim, and its related claims for breach of the duty of loyalty and violation of the MUTSA, Ronnoco has Article III standing to assert them. See Kuhn, 868 F.3d at 716; Carlsen, 833 F.3d at 909; ABF, 645 F.3d at 960. Defendant Peoples' motion to dismiss for lack of subject matter jurisdiction based on standing will be denied.

B. Motion to Dismiss for Lack of Subject Matter Jurisdiction–Amount in Controversy

On the morning the bench trial began, Peoples filed a second motion to dismiss Ronnoco's Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P.. (ECF No. 112.) In this motion, Peoples asserts that Ronnoco fails to adequately plead or prove it has damages in excess of $75,000, as required by the diversity jurisdiction statute, 28 U.S.C. § 1332(a). Peoples makes both a facial and a separate factual challenge.

"Typically, complaints need only allege the jurisdictional amount in good faith and will be dismissed only if it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'" American Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc., 912

F.3d 1076, 1080-81 (8th Cir. 2019) (quoting Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC, 620 F.3d 926, 931 (8th Cir. 2010)). However, "If the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." Kopp v. Kopp, 280 F.3d 883, 884-85 (8th Cir. 2002).

With respect to his facial challenge, Defendant Peoples points to allegations in the Amended Complaint that the "full extent of Peoples' actions and the damages caused thereby are presently unknown" (ECF No. 11, ¶ 96); "[a]t this time, it is impossible for Ronnoco to calculate the damage that has resulted, and will continue to result, from Peoples' violations" (id. ¶ 110); and to the Prayer for Relief that seeks, among other things, "[m]onetary damages in an amount unknown at this time" (id. at 17). Peoples asserts these allegations show that Ronnoco has not adequately pleaded the requisite amount in controversy.

The Amended Complaint seeks monetary damages, injunctive relief, and contractual attorneys' fees, and alleges that the amount in controversy exceeds $75,000 "in that Peoples has caused, or if not enjoined, will cause Ronnoco to suffer lost profits in excess of $75,000." (ECF No. 11, ¶¶ 24, 26.) The Amended Complaint also alleges:

> Peoples' breach of the [FCA] has caused and will continue to cause damages to Ronnoco, including without limitation jeopardy to and/or loss of Ronnoco's existing and future business relationships and contracts with its customers, lost profits, loss of goodwill, loss of customer contacts, unfair competition, loss of confidential business information, loss of referral sources, damage to or loss of Ronnoco's reputation, and loss of competitive advantage.

(Id. ¶ 89.) These factual allegations are sufficient to allege an amount in controversy in excess of $75,000, as it does not appear to a legal certainty that the claim is for less than the jurisdictional amount. Defendant's facial challenge is without merit.

Peoples also asserts a factual challenge that Ronnoco cannot meet its burden to prove that it has damages, or that its damages are the result of his actions. Peoples contends that Ronnoco cannot use Trident's 2019 revenue numbers to prove anything about its 2020 contracts or sales

performance. He also assert Ronnoco cannot show damages because it did not lose two Texas contracts, and its loss of a third was because of John Walker's decision to rely on "outdated and publicly accessible pricing information in formulating its bid." (ECF No. 113 at 12.) Finally, Peoples asserts that Ronnoco's purchase of Trident in February/March 2020 and subsequent entry into the school juice market was "poorly timed" because the COVID-19 pandemic had already begun affecting the U.S. population and, in mid-April 2020, the Governor of Texas ordered all K-12 schools closed for the duration of the school year which caused sales in the juice industry to decline.

Past profits can be used to estimate future lost profits for purposes of determining the amount in controversy. See, e.g., United Seating & Mobility L.L.C. v. Homen, 4:05CV2208 JCH, 2006 WL 473739, at *2 (E.D. Mo. Feb. 28, 2006) ("As Defendant generated revenues exceeding $300,000 during a five-month period while in the employ of Plaintiff, a jury easily could find that the value of enjoining her from competing with Plaintiff and/or soliciting its clients for a period of one year exceeds $75,000."). Further, in actions seeking injunctive relief, "the amount in controversy is the value to the plaintiff of the right that is in issue." Usery v. Anadarko Petroleum Corp., 606 F.3d 1017, 1018 (8th Cir. 2010) (citing cases).

Ronnoco's trial evidence is sufficient to meet its burden to prove, by a preponderance of evidence, that the amount in controversy does not appear to a legal certainty to be $75,000 or less. See American Fam. Mut., 912 F.3d at 1080-81. At trial, Ronnoco presented its Exhibit 83 showing that Trident's 2019 sales revenues from schools in three purchasing cooperatives in Texas was over $1.2 million. (Tr. Vol. 1, 76:2-77:5.) Peoples testified that "for the most part" all customers in those purchasing cooperatives were in his sales territory for Trident (id. 77:8-14), and that in the absence of an injunction, "in a perfect world" and on his "best day" he would "capture" all of the revenue in Exhibit 83 for his new employer. (Id. 77:15-22; 78:17-20.) John

Walker, Trident's President, testified that Ronnoco/Trident makes a margin of approximately fifty-five percent on the $1.2 million in revenue (id. 118:17-19), resulting in gross profit from the three purchasing cooperatives in Exhibit 83 of approximately $660,000 for fiscal year 2019. Walker also testified that the FCA has a two-year non-competition period, and Ronnoco claims entitlement to eighty percent (80%) of Trident's profits, so this amount would far exceed $75,000.

As for Peoples' argument that Ronnoco is not entitled to count Trident's sales and profits as its own, the Court's findings and conclusions in the Order Granting Temporary Restraining Order rejected this argument. (ECF No. 97 at 2.) The Court's interlocutory finding is subject to reconsideration and change in the final merits decision, but for purposes of the instant motion to dismiss, Peoples' argument is not sufficient to overcome Ronnoco's evidentiary showing that the amount in controversy does not appear to a legal certainty to be $75,000 or less. Peoples' fact-intensive arguments with respect to the school contracts and the effects of COVID-19 on Ronnoco's damages similarly do not overcome Ronnoco's evidentiary showing. Defendant's motion to dismiss for lack of subject matter jurisdiction based on the amount in controversy will be denied.

C. Defendant's Motion to Reopen Evidence

This case was tried before the Court on February 8 and 9, 2021. On January 19, 2021, Ronnoco filed a separate action in this Court against two other former Trident employees, Kevin Castagna and Jeremy Torres. See Ronnoco Coffee, LLC v. Castagna, 4:21-CV-71 JAR (E.D. Mo.) (the "Castagna case"). Judge John A. Ross granted Ronnoco's motion for temporary restraining order against the Defendants on March 5, 2021, and granted its motion for preliminary injunction on April 21, 2021. (ECF Nos. 26, 51; 4:21-CV-71 RLW.) Judge Ross conducted a bench trial on the merits on June 2 and 3, 2021, and the Castagna case remains under submission.

Defendant Peoples states in the Motion to Reopen Evidence (ECF No. 133) that Ronnoco filed a First Amended Verified Complaint in the Castagna case on April 30, 2021, and alleged therein that a previously undisclosed entity, Trident HR Intermediate, LLC ("Trident Intermediate"), is the actual holder of the assets of Trident Marketing and Trident Beverage, and that Trident Intermediate is owned 100% by Trident HR Holdings, LLC ("Trident Holdings"). (ECF No. 66, ¶ 38; 4:21-CV-71 RLW.) Peoples contends this new evidence "effectively restructures the business relationships" of Ronnoco and Trident as described to this Court by John Walker in sworn testimony, and as found by this Court in the Temporary Restraining Order.

Peoples asserts that the Court's previous factual findings as to the Ronnoco/Trident relationship are factually incorrect as a result of Ronnoco's failure to disclose the existence of Trident Intermediate, and the Court must consider this new evidence to evaluate Ronnoco's corporate structure and its right to bring the instant action. Peoples asserts that the evidence is material because it raises new questions as to whether Ronnoco has a direct ownership interest in protecting the confidential information and trade secrets of Trident Holdings or Trident Intermediate, citing Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003) ("[I]t is a basic tenet of American corporate law" that a "corporate parent which owns the share of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary; and, it follows with even greater force, the parent does not own or have legal title to the subsidiaries of the subsidiary.").

Ronnoco responds that the Motion to Reopen Evidence should be denied because Peoples "did not exercise due diligence in the discovery process to obtain the information on which he now relies, as he is required to do by Rule 60(b)(2)." (ECF No. 135 at 1.) Ronnoco confirms that Trident Intermediate is an LLC that owns 100% of the stock of Trident Beverage and Trident Marketing, and states that the sole member of Trident Intermediate is Trident Holdings. Ronnoco

asserts that it is accurate to say Trident Holdings owns 100% of the stock of Trident Beverage and Trident Marketing, through a subsidiary called Trident Intermediate. Along with its Response, Ronnoco submits for *in camera* review the underlying documents from the transaction in which Ronnoco purchased Trident Beverage and Trident Marketing. Ronnoco states these documents were produced on a "Confidential" basis in the Castagna case.

Ronnoco asserts that the new evidence does not affect any claims or defenses in this action because Ronnoco has been clear throughout the litigation that it *indirectly* owns an 80% interest in Trident Beverage and Trident Marketing (ECF No. 135 at 2, emphasis in original), and nothing in the Court's previous analysis is changed by the existence of Trident Intermediate. Ronnoco also asserts that Peoples ignores the fact that Ronnoco is party to the FCA and thus has standing to enforce that agreement. Ronnoco states it is not attempting to enforce the rights of its subsidiaries, as Peoples argues, because Ronnoco employed Peoples and was the party to the FCA he signed, so its claims for breach of contract and breach of the duty of loyalty do not turn on the corporate structure at all. Ronnoco states that Peoples' argument only relates to its claim for misappropriate of trade secrets because—according to Peoples—it goes to which entity has the right to sue for misappropriation of the trade secrets at issue.

As a threshold procedural matter, Ronnoco's assertion that Peoples' Motion to Reopen Evidence is governed by Rule 60(b)(2) is incorrect. Rule 60(b) motions are available to provide relief from a "final judgment, order, or proceeding" for specified reasons. Rule 60(b)'s use of "the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." Fed. R. Civ. P. 60 advisory cttee. notes, 1946 Amendment, Subdivision (b). The Court's Temporary Restraining Order is not a final

judgment or order, but instead is an interlocutory order. As such, the Court has "complete power" to afford relief with respect to it.

This case remains under advisement as the Court has not yet issued findings of fact and conclusions of law on the final merits as required by Rule 52(a)(1), Fed. R. Civ. P., or a final judgment as required by Rule 58. The Eighth Circuit has stated, "It has been our long-standing judgment that '[a] court has, of course, the general power to reopen a case, either on motion of a party or on its own motion, while the matter is still under advisement, for the receipt of further evidence.'" United States v. Dico, Inc., 266 F.3d 864, 873 (8th Cir. 2001) (quoting Arthur Murray, Inc. v. Oliver, 364 F.2d 28, 34 (8th Cir. 1966)).

Next, the Court rejects Ronnoco's assertion that Peoples was at fault for failing to adequately discover its corporate structure. John Walker was questioned under oath about Ronnoco's corporate structure during the bench trial of this case and his response did not disclose the existence of Trident Intermediate, even though Ronnoco has now submitted evidence that Mr. Walker is the President of Trident Intermediate. (See ECF No. 147 at 1.) Instead, Mr. Walker testified as follows: "So Ronnoco purchased Trident Marketing and Trident Beverage. It formed a holding company called Trident Holdings and all the assets, stock, et cetera, were moved into Trident Holdings, and Patrick and I were paid for approximately 80% of the total value of the company." (Tr. Vol. I, 111:21-25.) And previously, at the hearing on Ronnoco's motion for contempt, Ronnoco's counsel Mr. Comerford stated,

> You know, with all due respect, Mr. Molner is not correct when he says that Trident only became a distributor for Ronnoco. Trident was acquired. And the way the transaction was set up is that Trident Beverage, the ownership and the assets of Trident Beverage went into a new entity called Trident Holdings. And Ronnoco, you know, from a corporate transaction standpoint Ronnoco took I believe an 80% ownership in Trident Holdings and then Mr. Walker retained a 17% ownership. So that's how it's structured.

(ECF No. 90, Tr. Mot. for Contempt Hearing, 24:21-25:4, Jan. 11, 2021.) Mr. Comerford then asked Mr. Walker if the way he described the structure of the transaction by which Ronnoco acquired Trident was accurate. Mr. Walker responded, "Very accurate, yes. A holding company was formed, Trident Holdings. Trident Holdings acquired all the assets of Trident Marketing and Trident Beverage, and Ronnoco acquired 80% of the stock in Trident Holdings, I retained 17% of the stock, and Patrick Walker, my brother, retained 3% of the stock." (Id. at 26:14-21.)

The fault rests with Ronnoco for failing to disclose, fully and accurately, through Mr. Walker's testimony the ownership structure of Trident Beverage and Trident Marketing, and the complete facts concerning the transaction by which Ronnoco acquired them. Ronnoco offers no explanation for this omission. Defendant Peoples' Motion to Reopen Evidence will be granted. The Court will take judicial notice of the documents submitted by both parties in connection with the instant Motion to Reopen Evidence and consider them as part of the evidentiary record in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Peoples' Motion to Dismiss is **DENIED**. [ECF No. 91]

**IT IS FURTHER ORDERED** that Defendant Peoples' Motion to Dismiss for Lack of Jurisdiction is **DENIED**. [ECF No. 112]

**IT IS FURTHER ORDERED** that Defendant Peoples' Motion to Reopen Evidence is **GRANTED**. [ECF No. 133]

Ronnie L. White
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 13th day of September, 2021.